STATE of Missouri, Respondent,

v.

Alfred STORY, Jr., Appellant.

No. 63549.

Supreme Court of Missouri,
En Banc.

Feb. 23, 1983.

RSMo 1978,[1] and was sentenced to five years in prison. The Missouri Court of Appeals, Southern District, affirmed. We ordered the case transferred, Rule 83.03, to determine whether appellant was entitled to an instruction on a lesser included offense. We review as on original appeal, Rule 83.09, and we affirm.

I

Don Richardson, an undercover officer for the Intelligence Division of the Missouri State Highway Patrol, provided the principal testimony for the state. He testified that he was working in Joplin, Missouri, on September 17, 1978, and first encountered appellant at around 1 p.m. that day. Richardson and two other men, Oatis Crayton and Herb Weston,[2] were driving a 1978 Dodge Supervan when appellant passed them in a silver-gray Lincoln Continental. Richardson testified that Crayton told him to flag down appellant, and when he did so appellant stopped in front of the Joplin Boys Club. Crayton introduced Richardson to appellant, and at some point all four men got into the van, which had been provided for Richardson's undercover operation.

Crayton asked appellant whether he had anything for sale. Appellant asked Richardson what he had in mind, and Richardson said he wanted "whatever he [appellant] had for sale." Appellant responded that he had two pounds of "homegrown," slang for marijuana. He said he would sell it for one hundred dollars per pound, but Richardson told him he would not buy it unless he sampled it first. Thereupon appellant produced a small bag of marijuana that he described as the "same stuff" Richardson was going to buy. Weston rolled a

David Robards, Public Defender, Charles Buchanan, Asst. Public Defender, Joplin, for appellant.

John Ashcroft, Atty. Gen., Henry Herschel, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant was convicted of the felony of selling marijuana in violation of § 195.020,

1. Section 195.020, RSMo 1978, provides:
It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, distribute, or compound any controlled or counterfeit substance except as authorized in sections 195.-010 to 195.320, or to possess any apparatus, device or instrument for the unauthorized use of any controlled substance.
Marijuana is a Schedule I controlled substance. § 195.017(2)(4)(j). Section 195.020 was substantially revised and expanded by Act of June

2, 1982, sec. 1, § 195.020, 1982 Mo.Laws 379, 384–85 (codified at § 195.020, RSMo Supp. 1982).
All statutory references are to RSMo 1978 unless otherwise indicated.

2. The record reveals that Weston was an informant and that Crayton apparently was another suspect from whom Richardson had made another drug purchase shortly before the encounter with appellant.

cigarette, which was lit and passed among the four men. Richardson said that when the cigarette was passed to him, he would "pretend to smoke from it and pass it on." After a few minutes of conversation Richardson told appellant that the marijuana was not of high quality and was not worth one hundred dollars per pound. The two men then discussed the price and agreed that Richardson would pay one hundred dollars for both pounds. Appellant then told Richardson to go to Ewert Park in Joplin and wait for him.

Richardson testified that shortly thereafter appellant reappeared at Ewert Park. He parked his car alongside Richardson's van, and Richardson got in the front seat of appellant's car. Appellant got a black plastic trash bag from the trunk and brought it inside the car. Inside the bag was a brown paper bag that contained three smaller white plastic bags. Richardson looked inside the white plastic bags and concluded that they contained marijuana. He agreed to buy the marijuana and gave appellant five $20 bills. Appellant thanked Richardson, and Richardson returned to his van.

Richardson subsequently delivered the bags to the Highway Patrol laboratory in Jefferson City. Afton Ware, a Highway Patrol chemist, testified that the substance in the bags was indeed marijuana. The amount of marijuana in the bags totaled 694.4 grams, or 1.53 pounds.

Appellant testified on his own behalf as the only defense witness. He said that toward the end of September 1978 he was driving in Joplin when Crayton waved him into Ewert Park. Crayton introduced him to Richardson and Weston and invited him into the van for some beer. Richardson, whom appellant could not identify at trial, asked appellant whether he had any marijuana, and appellant told him he had three cigarettes. Appellant gave one cigarette to Weston, who lit it and passed it around. Richardson told appellant that the marijuana was no good and offered some of his own, which he produced in a small plastic bag. Later, Richardson asked appellant if he knew where there was any marijuana or cocaine for sale, and appellant replied that he did not. Appellant said he left the van at that point and never had any other contact with Richardson, although he said he had seen him parked in Ewert Park on several occasions. Appellant denied selling marijuana to Richardson.

## II

Two of appellant's claims are related. He contends first that the trial court erred in overruling his motion to suppress Richardson's in-court identification of appellant as the person from whom he purchased the marijuana. He argues second that the trial court erred in submitting the case to the jury because the state failed to introduce evidence sufficient to support the jury's finding that appellant was the person who sold the marijuana to Richardson.

These two arguments are predicated upon what appellant contends is the tainted and uncertain nature of Richardson's identification of appellant. Richardson had never met appellant before September 17, 1978, the day the marijuana sale allegedly was made. Thereafter, twenty months and two days passed until the day of the trial, May 19, 1980, when Richardson again saw appellant in person. Richardson made a photographic identification of appellant for the first time on February 13, 1980, when he viewed a single photograph of appellant that had appellant's name and date and place of birth inscribed on the back. He again viewed the photograph on May 18, 1980, the day before trial. Richardson's report, filed three days after the incident, contained only a generalized description of the suspect as a "Negro male, date of birth 1–2–55, six foot tall, 160 pounds, black hair, brown eyes, small turquoise earring in left ear." Richardson was unable to give the defense attorney a more detailed description when the defense attorney questioned him six days before the trial, but the record reflects that at their meeting the defense attorney would not allow Richardson to review his report in order to refresh his memory. The report recites appellant's full name, but Richardson conceded that appel-

lant had been introduced to him only as "Alfred" and that he had learned appellant's full name only when Crayton told him. At trial the defense attorney had Richardson view a lineup of five photographs, one of which was a photograph of appellant, but Richardson was unable to narrow the choice to fewer than two. It is in view of these facts that appellant claims the in-court identification was tainted and uncertain.

## A

■ We first address appellant's contention that the trial court should have sustained his motion to suppress the in-court identification. The principles that guide our inquiry are well settled. Reliability, rather than suggestiveness, "is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *State v. Charles,* 612 S.W.2d 778, 780 (Mo. banc), *cert. denied,* 454 U.S. 972, 102 S.Ct. 522, 70 L.Ed.2d 392 (1981); *State v. Higgins,* 592 S.W.2d 151, 160 (Mo. banc 1979), *appeal dismissed,* 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980). In determining whether an identification is reliable, the court must consider the "totality of the circumstances," including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Brathwaite,* 432 U.S. at 113, 114, 97 S.Ct. at 2252–53. *See Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Charles,* 612 S.W.2d at 780; *Higgins,* 592 S.W.2d at 160. Finally, "[a]gainst these factors is to be weighed the corrupting effect of the suggestive identification itself." *Brathwaite,* 432 U.S. at 114, 97 S.Ct. at 2253.

■ The length of time between the crime and the confrontation was indeed substantial. After the crime some seventeen months passed until Richardson first identified a photograph of appellant and some twenty months passed until the trial. That length of time, however, is of itself an insufficient reason to exclude Richardson's identification testimony. The remaining factors necessary to determine the question demonstrate that the testimony was sufficiently reliable to justify its admission.

First, there is no question that Richardson had ample opportunity to view the man who sold him the marijuana. That man was in the van with Richardson and the other two men long enough for the four to smoke a cigarette and discuss the price at which the marijuana would be sold, and thereafter Richardson and the man were in the man's car long enough for Richardson to inspect the goods and make the payment. Second, it cannot be said that Richardson was inattentive. He had been a member of the Highway Patrol for thirteen years and an undercover officer for two and one-half years. He therefore "was not a casual or passing observer" but, rather, "was a trained police officer on . . . specialized and dangerous duty." *Id.* at 115, 97 S.Ct. at 2253.

> [A]s a specially trained, assigned, and experienced officer, he could be expected to pay scrupulous attention to detail, for he knew that subsequently he would have to find and arrest his vendor. In addition, he knew that his claimed observations would be subject later to close scrutiny and examination at any trial.

*Id.* Third, there is no contention that Richardson's description of appellant was inaccurate. Appellant claims only that the description was generalized. This argument, which concerns the weight of the testimony more than its admissibility, has little force because Richardson testified on cross-examination by the defense that he "probably could have added things . . . as far as . . . his [appellant's] build was concerned or the width of his nose or the length of his hair" but that "it wouldn't have helped me to remember him." Fourth, Richardson's testimony regarding the identification of appellant reflects a high degree of certainty. These factors outweigh the substantial time

lapse between the crime and the confrontation.

Finally, the record indicates that the suggestiveness of allowing Richardson to view a single photograph of appellant inscribed on the back with appellant's name and date and place of birth did not corrupt the reliability of the in-court identification. Richardson testified affirmatively that he used both the photograph and his report only to refresh his memory, that he could have identified appellant without looking at the photograph, and that he did not base his in-court identification on the photograph. Considering the foregoing factors, we conclude that the trial court did not err in refusing to exclude the identification testimony.

### B

■ We next address appellant's argument that the trial court erred in submitting the case to the jury because the state failed to introduce evidence sufficient to support the jury's finding that it was appellant who sold the marijuana to Richardson. This is not, as appellant contends, a case in which the "evidence is inherently incredible, self-destructive or opposed to known physical facts." *State v. Gregory,* 339 Mo. 133, 144, 96 S.W.2d 47, 53 (1936).[3] In assessing the sufficiency of the evidence, therefore, we must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. Our inquiry is limited to whether the evidence, viewed in the light most favorable to the state, is sufficient to support the verdict. *State v. Bolder,* 635 S.W.2d 673, 679 (Mo. banc 1982), *cert. de-*

nied, —— U.S. ——, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983); *State v. Turner,* 623 S.W.2d 4, 6 (Mo. banc 1981), *cert. denied,* 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982); *State v. Strickland,* 609 S.W.2d 392, 395 (Mo. banc 1980).

■ It is beyond serious contention that the evidence was sufficient to support the verdict. Many of the same factors discussed above compel this conclusion. Richardson, a trained and experienced police officer, was not only an eyewitness to the event but also a participant. He had ample opportunity to view the man who sold him the marijuana. He testified at trial that he was certain appellant was that man. That testimony was a sufficient basis for the verdict, for "[t]he testimony of a single witness is sufficient to establish the identity of a criminal defendant if the jury believes it beyond a reasonable doubt." *Bolder,* 635 S.W.2d at 679. Appellant argues that Richardson's description of the suspect was general, his testimony was at times somewhat inconsistent and amenable to attack, and his photographic identification was suggestive. While those factors affect the credibility of the testimony, they do not make the testimony so inherently incredible that we should find it insufficient to support the verdict. The evidence, viewed in the light most favorable to the state, fully supports the verdict.

### III

Appellant's final contention is that the trial court erroneously refused to instruct the jury on the offense of nonremunerative

---

**3.** Appellant cites *State v. Phillips,* 585 S.W.2d 517 (Mo.App.1979), for the proposition that "where the evidence is uncorroborated, contrary to common experience and common sense, the appellate court should reject the evidence and reverse the conviction." *Phillips,* however, was a rape case, and the corroboration requirement made therein applies with respect to the testimony of the prosecutrix. *Phillips* held that a

> conviction for rape may be sustained upon the uncorroborated testimony of the prosecutrix alone, unless her testimony is contradictory and in conflict with physical facts, sur-

> rounding circumstances, and common experience so as to be so unconvincing and improbable that it is extremely doubtful, in which case corroboration is required to sustain the verdict.

*Id.* at 520. This has been the law in Missouri with regard to rape cases at least since the decision in *State v. Goodale,* 210 Mo. 275, 282–83, 109 S.W. 9, 11 (1908), but we have found no non-rape case that imposes the corroboration requirement. In any event, as we noted above, the testimony in the case at bar is not so inherently incredible that it calls for a more searching inquiry.

delivery of less than twenty-five grams of marijuana[4] because, under *State v. Bethel,* 569 S.W.2d 270 (Mo.App.1978), that offense is a lesser included offense of that which was charged, the sale of marijuana. Appellant's argument, as applied to these facts, is unpersuasive.

The trial court must instruct the jury on all lesser included offenses supported by the evidence, and it is error not to do so. *State v. Smith,* 592 S.W.2d 165, 165 (Mo. banc 1979). The necessity for evidentiary support lies at the heart of this precept, for "a conviction which does not rest on substantial evidence denies a defendant fundamental fairness and is a manifest injustice." *State v. Dayton,* 535 S.W.2d 479, 491 (Mo.App.1976). Therefore, "[i]n order to require the giving of an instruction on the included or lesser offense there must be evidentiary support in the case for its submission," *State v. Craig,* 433 S.W.2d 811, 815 (Mo.1968), and "an instruction should not be given in the absence of evidence to support it," *State v. Agee,* 474 S.W.2d 817, 820 (Mo.1971). It would be error if the court instructed the jury on a lesser included offense not supported by the evidence and the jury rendered a verdict finding the defendant guilty of that offense. *See, e.g., State v. Prier,* 634 S.W.2d 197 (Mo. banc 1982).

Nonremunerative delivery of less than twenty-five grams of marijuana is a lesser included offense of the sale of marijuana. *Bethel.* In this case, however, the trial court properly refused to instruct the jury on that offense, because the evidence did not support such an instruction. Appellant conceded that he had been in the van with Richardson and the other two men and that he had produced a marijuana cigarette of his own for the four to smoke. This was at a prior time and place. The real conflict in the testimony regarded the subsequent meeting at Ewert Park. Richardson testified that the second meeting did occur and that appellant sold him the marijuana at that meeting. Appellant's defense was that the second meeting never occurred and that he had no contact with Richardson after leaving the van. These irreconcilable versions of this incident leave no room for a middle ground. The evidence presented supported only a verdict of guilty based upon Richardson's testimony or a verdict of not guilty based upon appellant's denial that the second meeting ever occurred. The trial court therefore did not err in refusing to instruct the jury on the lesser included offense of nonremunerative delivery of marijuana. *See State v. Savage,* 621 S.W.2d 116, 119 (Mo.App.1981). *See also State v. Mays,* 598 S.W.2d 613, 616 (Mo.App. 1980).

It might be argued that the jury could have believed that the second meeting in fact occurred but that appellant gave Richardson less than twenty-five grams of marijuana rather than sold him 1.53 pounds. The question, however, is not whether the jury could convict appellant of a lesser in-

4. Section 195.200(1)(1)(c) provides:

> Any person, who delivers less than twenty-five grams of marijuana or less than five grams of hashish for no remuneration to any other person shall, on conviction, be punished by confinement in the county jail for not more than one year, or be fined not more than one thousand dollars, or by both such confinement and fine, provided that this penalty shall be applicable only upon the first offense and this paragraph shall not apply if such person has been previously convicted of any felony related to controlled substances.

Appellant testified that he had been convicted previously of misdemeanor possession of less than 35 grams of marijuana, § 195.200(1)(1)(a), but his parol testimony was uncorroborated by admission into evidence of the court record of the previous conviction. The court of appeals found appellant's testimony insufficient to prove that he had not been previously convicted of a felony related to controlled substances, and appellant argues that that holding, among other things, improperly placed the burden on him to prove himself guilty of the lesser included offense. In view of our holding that the trial court properly refused to instruct the jury on nonremunerative delivery of less than 25 grams of marijuana, we need not decide whether in this case appellant's testimony was sufficient to prove the previous conviction. Neither do we find it necessary, as did the court of appeals, to determine the meaning of "first offense" within the statutory limitation that "this penalty shall be applicable only upon the first offense."

cluded offense but whether the trial court was required to instruct the jury on it. The evidence, as noted above, did not support such an instruction, and "the fact that a jury may disbelieve some of the evidence of the State, or decline to draw some or all of the permissible inferences, does not entitle the defendant to an instruction otherwise unsupported by the evidence." *State v. Achter,* 448 S.W.2d 898, 900 (Mo.1970). The real thrust of appellant's contention is that the evidence of the incident in the van supported the lesser included offense instruction. It was the incident in the park, and not the earlier incident in the van, that spawned the charge lodged against appellant. A defendant charged with one crime is not entitled to an instruction based upon another earlier crime that he admits occurred, but with which he is not charged.

The judgment is affirmed.

RENDLEN, C.J., HIGGINS, J., and SEILER and MORGAN, Senior Judges, concur.

DONNELLY, J., concurs in result.

GUNN, BILLINGS and BLACKMAR, JJ., not participating because not members of the Court when cause was submitted.